Good morning, Your Honors. Michael Spencer from the Milberg Weiss Firm in New York City for the appellant in this case. Your Honor, this case involves two issues involving time calculations, strangely enough. The first being how to calculate when an opposing brief was due with respect to a motion to dismiss in the district court. And the second issue, a little more substantial, being how tolling should apply in calculating the statute of limitations in the action that's before the court brought under Section 10B of the Securities Exchange Act. I'll give you, if I may, just one brief moment on what this case is about, even though the issues before the court are procedural. Both of these cases, the predecessor litigation and this one, were brought by people who were sold deferred variable annuities, which are a tax shelter investment by Nationwide, the defendant here. And those people were sold this tax shelter investment for placement in their tax qualified retirement plans. In other words, in their IRAs or their 401Ks, things like that. What the plaintiffs claim in this case substantively is that Nationwide was under a duty but omitted to disclose to the prospective purchasers that the tax benefit of the deferred annuities, the tax shelter benefit, was completely unnecessary for someone putting that investment in an IRA or in a 401K because an IRA or a 401K automatically already provides exactly the same tax deferral. But where did Mr. Hellman put his investment? He put it in his, in his, Your Honor, I'm not sure what to call it. It's Stand-alone IRA? It may be a stand-alone IRA, yes. But what he went to purchase was some investment for money that could be qualified in a retirement plan. He didn't care whether he put it in one technical stand-alone one or in a separate custodial account. He But doesn't that go to the crux of your argument that you're paying a premium for a tax deferred investment where you already have a tax deferred investment in the form of an IRA, a Q or whatever? He didn't pay twice for tax deferral, did he? Your Honor, yes, he did. He actually paid once where he shouldn't have paid at all. For an IRA, you're not paying for it at all. You get to put the money in there and it's tax deferred. Right, but you need not buy a premium investment that's already tax deferred if you're going to put it in a tax deferred vehicle. That's our point. As I understand the facts here, he didn't put it in a tax deferred vehicle. What he did, Your Honor, when he went to the nationwide agent, he said to the nationwide agent, I am capable this year of putting a certain amount of money into a tax qualified retirement plan. What should I purchase to do this? What should I purchase? And what the agent sold him, apparently, was a tax qualified standalone plan. The evil in this, Your Honor, and the thing that should have been disclosed to him, was that he didn't need to buy anything that had tax shelter benefits and tax shelter fees in order to obtain the tax shelter benefit because the purpose for which he was there, whether it's putting $3,000 in an IRA or for other class members rolling over money from a previous IRA, any of those situations allowed those people, regardless of what technical form under the Internal Revenue Code was used, to invest that money on a tax deferred basis. And buying a tax shelter for that purpose without disclosure that you're paying for something that you don't need is what is substantially wrong here. Now, Your Honors, I'm afraid of this line of questioning, not because I don't like the substance of it, but because the issues before the court are not the substance of the things that you are asking about. Well, one of the issues before the court is whether or not your client, Hellman, was a member of the class that was part of the state complaint in Ohio. And so the nature of what he purchased and what his allegations were is very relevant. Okay, Your Honor, I'll accept that. I hope so. He does have to be a member of the class to have any argument to tolerate that. And I believe that that is absolutely definitively answered by the class definition in the operative complaint in the Ohio action, which is on page 33 of the excerpts of record. And if you look at that class definition, it indubitably covers both Ms. Castillo, the plaintiff in that action, and Mr. Hellman, who sought to intervene there and who was the plaintiff, of course, in this action. And by the way, no one said, including nationwide in the Ohio case, when Mr. Hellman sought to intervene that he wasn't a member of the class that he was seeking to intervene in. This is a newly concocted argument. But if you look at that definition, it lists each and every provision of the Internal Revenue Code that allows any kind of tax qualified retirement plan, including 403B, which is the section that Mr. Platt argues creates the dissonance between Mr. Hellman's claim and the prior action. It is here in black and white, and the exact same class definition is used in the Hellman case that we're here for. So to say that Mr. Hellman was not a member of the earlier class is really sophistry. Is he a person who purchased an individual deferred annuity contract or who received a certificate to a group deferred annuity contract sold by defendants, which was then used to fund a contributory retirement plan or arrangement? Yes. I don't think even Mr. Platt will disagree with that. What he says is that the evil that we claim goes on here, that the tax deferral was unnecessary, substantively on the merits, didn't infect Mr. Hellman's transaction. We're not here to argue the merits today, Your Honor. I want to go back to the district court to argue those merits. But you have to show that the same allegations were in this complaint, in the state complaint, as in the federal complaint, in order to win on your tolling argument. That is true. The state law claims a fraud as opposed to securities. That's true. The same factual allegations. And I don't think there's any dispute here, Your Honor, that my description of what was omitted, according to the complaints in both cases, are the same in both cases. We say that Nationwide was obligated but omitted to disclose to prospective purchasers who were putting these things in a tax-qualified plan that the tax shelter benefit was unnecessary for them. That's the claim. I know that Mr. Platt thinks that that doesn't make sense for some class or subclass or part of the class here, but that's a merits argument. It's not a lack of identity between the allegations of the earlier action and the later action. And I don't think this Court should struggle to find that there's a gap between the two, particularly because, as we stated in our brief, when Mr. Hellman sought to intervene in the Ohio action to help out the plaintiff there, who spoke only Spanish and we thought was not probably an ideal class representative standing alone, when Mr. Hellman sought to intervene, how did Nationwide oppose that motion for intervention? It didn't say, who's this Hellman? He's not a member of the class. He can't intervene in it. What they said was Mr. Hellman should, if he wants to participate in a class action here, file a subsequent federal class action. They said that verbatim twice in their moving papers very, very clearly. And for them now to come and say that having done exactly that, which is what Mr. Hellman did,  and don't think that the issue of the timing of the claims was not front and center in front of the Ohio court when this was being litigated there, the intervention motion, because it was. The issue of whether Hellman's claim related back to the filing initially of the Castillo action was front and center in front of the Ohio court. So Nationwide said to that court, these new proposed plaintiffs, including Mr. Hellman, could then pursue a federal class action or an individual action in state or federal court. They also said if the proposed new plaintiffs wish to be named plaintiffs in a class action, they should file it separately. And the Ohio court, in denying intervention, having listened to this argument by Nationwide, said the proposed plaintiffs would remain eligible to pursue their claims under the federal SLUSA statute. The SLUSA statute is the statute that says these claims now need to be brought as federal securities claims in federal court. So, you know, whether you look at this as a matter of fairness or estoppel or a reflection of the true course of events between these two actions, I don't think there's any room for daylight, either as a matter of plain substantive law or as a matter of what Nationwide specifically said to the Ohio court with respect to this specific plaintiff, Mr. Hellman, about the relationship between these two cases. Really, what Mr. Hellman did after losing on his intervention motion in Ohio was to come into federal court and file the federal securities claim as a class action that Nationwide invited him to do and told the Ohio court that he should be required to do rather than be able to continue as an intervener in the Ohio court. And what that was all about, your honors, is that between the time that the Ohio action was filed and the time the federal action was filed, the SLUSA statute was enacted, and it was then interpreted on appeal to apply to this kind of case. What Nationwide was bent on doing in the Ohio court was to get it out of a common law fraud context, which is what the Ohio case was, and into what it thought was a far more protective environment for it, a federal securities law as a class action. And they succeeded in that, and here we are. But for them now to turn around and say that these cases are not related, they don't involve the same allegations, there's a problem going from state law to federal law, all of these things are contradicted by what they said to the state courts in order to procure the result that they got in that state court. So in that respect, your honors, I really think it does not lie appropriately for Nationwide to be making that allegation here. I will try to reserve some time and let me talk about a couple of other issues briefly. One of them is the question as to whether the prior Ohio class action can support tolling for a subsequent class action in this court. Nationwide has disputed that on this appeal, although it was not a ground for the district court's action here. The Catholic Social Services case in this circuit is completely dispositive on that point. Of course, that was in an en banc decision. It was rendered over a very vigorous dissent, raising the exact same issues that Nationwide is seeking to relitigate here. But in this circuit, the law is contrary to Nationwide's position and happens to favor, follow on class actions as well as individual actions tolled by earlier actions that involve substantially the same allegations. That is what this situation is. To what extent is that case limited to the fact that there's an intervening change of law, which is a somewhat unusual circumstance as opposed to the fairly commonplace occurrence of the named plaintiff falling out for some reason? I have two answers to that, Your Honor. One is that if you look at the reasoning behind Catholic Social Services, the reasoning is policy-driven. It's not driven by the facts of that case. I'll agree that the facts of that case were quite unusual given the intervening congressional enactments that changed the law and made the claims sort of change over time. But if you look at the policy underlying the reasoning of the court, and that is why motivate a litigant in the earlier action to file the second claim prematurely if it turns out not to be necessary, why engender that kind of judicial inefficiency? That principle applies across the board regardless of the facts of the case. The other thing that I would observe quite unusually is that in this case as well as that one, there has been a great intervening change of law. And that is that the initial claims that we had in Ohio State Court based on fraud were no longer viable after SLUSA was enacted. And therefore, the new action here very much did reflect the fact that the law in an intervening way changed radically with respect to seeking redress for the violations that we are raising here. So I submit on that basis, Your Honor, that Catholic Social Services, even if you look at it as involving peculiar facts, isn't particularly different from the situation that we're presented with here. Your Honor, I think that's it. May I turn you to the procedural question of whether the dismissal for failure to file on time is sustainable? And being somewhat simple-minded, I look at the record, and the record before the district court showed a response to one day before it was filed. And so you argue to us that there was a the calculation was wrong, but didn't argue that to the district court, and it looks right on the face of it. Your Honor, I will admit that it was an unfortunate situation all around. And I do believe that from the district court's point of view, I agree. It looked like the brief was due on Monday rather than Tuesday. Well, the question is, then, what's the error? Because as a district judge, I look at the record. The record shows when it's due. I say, it isn't here. I'm going to dismiss it. Well, Your Honor, the reason it wasn't argued to the court, of course, was that the court entered judgment before anything could happen. Sure, but that doesn't keep people from going in and saying, wait a minute. You miscalculated. You misapprehended what happened. We had this side deal. We had whatever, whatever. None of that's in the record, and we can't consider it on appeal. So my question is, looking down on the record, it's absolutely right. So why aren't we stuck with it? Why aren't you stuck with it? I think you can consider it on appeal, Your Honor. The rule is that disputed factual issues cannot be raised for the first time on an appeal. There is no record at all in the district court, and it is totally contrary to our case law, as well as to the role of the appellate court, to entertain new factual submissions on appeal. Well, Your Honor, I hope you'll agree that this situation is quite unusual and out of the mainstream of the cases that you're talking about. I don't think so, because typically what people do who are caught in that kind of a problem, they go immediately back into the district judge and say, hold on, you've got this wrong, and here's why. And they make a submission, and the district judge looks at it and says, sure, let me hear you out, and hey. We thought very hard about that, Your Honor. And the reason we didn't do it is because, number one, the district court also ruled on the statute of limitations grounds substantively. We did not have any basis for moving for reconsideration on that ground. Well, sure, but you had a basis for moving to reconsider the dismissal. Your Honor, he dismissed it on the statute of limitations grounds as well. He dismissed it on alternate grounds. And so you're taking the risk that one of those alternate grounds sticks. Well, Your Honor, I hope that's not the case. I think why shouldn't it be? Because, Your Honor, the dismissal of an entire action for having a brief filed one day late on a motion to dismiss is an unduly severe sanction. Sure, it's tough, but the district judge no doubt would have said, yeah, you know, you're right, it is tough. And now that I've heard you, you had a legitimate reason for thinking that the situation was otherwise, so I'm letting you out of your default. But that didn't happen here because you didn't give the district judge a shot. Your Honor, I think that the consequence of the line of reasoning that you're following would have been to require us to move for reconsideration in the district court. And I, with all respect, I don't think that there's any rule of law or practice in the court that requires that. Mr. Sensor, I completely, lest you misapprehend me, I completely agree that it's not an exhaustion issue of any sort. You sure don't have to move to reconsider or move to amend the judgment or any of those things in order to appeal. But not having done that, you are stuck with the record that was before the district court. That's my only point in looking at the record that was before the district court. I'm questioning how he could have done anything other than conclude what he did. Well, Your Honor, just to finish up, I think that his sanction was too severe. And we knew from the fact that he bounced Nationwide's brief for having too many pages in it a few weeks before that he was a stickler for those kinds of things. And that's why we came here, Your Honor. Okay. Thank you. Good morning, Your Honors. My name is Charles Platt. I'm here on behalf of the Nationwide defendants and the appellees. I think Your Honor has got the main issue here exactly right. The main issue here is whether or not Hellman and Hellman's individual circumstances present a claim and make him an asserted member of that prior class action in Ohio State Court. Can you just tell me in English, I mean, in really, really simple words, why it is that he's not a member of the Ohio class? Because reading it, at least superficially, it looks like the words are the same. It is true, Your Honor, that the words that Hellman uses in his class complaint in the District of Arizona are the same as the words, more or less, in the Ohio State Court class action. But that's not the test. Under the American Pipe Rule, the test is whether or not Hellman individually was a member of that prior State Court class action. And our point is that if you look at the documents incorporated by reference in the complaint, in Hellman's complaint in the Arizona District Court, you see, as I think Your Honors have already recognized, that Hellman bought something called an individual retirement annuity, which is a standalone retirement plan. That is very different than the class that was asserted in the Ohio State Court case, where the allegation on behalf of that class was that people bought a tax-sheltered annuity and put it into a separate tax-sheltered retirement plan or account. And I can cite you a dozen references in the Castillo State Court complaint in Ohio that make that distinction, that the people in Ohio who are claiming fraud were saying, we got unnecessary tax deferral, we were defrauded because we bought something that was already tax-deferred and it was put into a separate account, a separate retirement plan that was tax-deferred and therefore we got tax-deferred. We got a double dose of tax deferral and we paid a premium, as Your Honor pointed out, with respect to that additional tax deferral. And the double dose of tax deferral really doesn't do them any good, right? They don't get two tax benefits. That was their claim, Judge. Our position in Ohio might have been, you're not paying for that tax deferral, so it's not as if you're paying extra for it. That's a gift, if you will, bestowed by Congress. But to follow up on Judge Bremer's question, so Halman's class that he was proposing were people who did purchase something from Nationwide, an IRA, but Nationwide did not then take that IRA and put it in another tax-sheltered account. As I understand the class claim in Castillo, which is the one we have to refer back to, it is that people purchased a tax-deferred annuity and used it as an investment to fund a separate retirement plan that was already tax-deferred. Whereas if you look at Halman's individual circumstances, what he purchased was something called an individual retirement annuity. That's provided for in Section 408B of the Internal Revenue Code. And it follows as a separate section, a section devoted to something called individual retirement accounts. And indeed, if you look at Publication 590 of the Internal Revenue Service, it talks about the distinction between an individual retirement account that is set up for taxable investments to be placed into it. That's on the one hand under Section 408A and under Section 408B, there's something called an individual retirement annuity. An individual retirement annuity is something, is a contract that's issued by an insurance company and it permits the contract holder to invest in pre-selected investment options made available through that contract. And there's only one form of tax deferral that is granted with respect to the earnings on those investments. That is the tax deferral that's provided for by Section 408 of the Internal Revenue Code and more specifically 1.4081 of the IRS regulations. And that's why if you compare Halman's individual circumstances, and this is the American Pipe Test to compare Halman's individual circumstances, what his claim is that he purchased an individual retirement annuity, and you compare that to the Castillo class where people were saying, we bought a tax-sheltered product and put it into a tax-sheltered account. And if you look at Paragraph 6 of the Castillo complaint, that's what they say happened. That is a fundamentally different claim. As a matter of fact, in the Castillo complaint, they go so far as to say what was going on in the Castillo situation was as if people were purchasing tax-exempt municipal bonds as an investment for their retirement plan that was already tax-deferred. That's a fundamentally different claim in Ohio State Court in that class action than the class action, than Halman's circumstances here in the class action in the District of Arizona, regardless of what Halman's class definition says. It's Halman's individual circumstances we have to look at. I think you also have to look at the fact that in this particular case, Halman came to the Ohio State Court and he said, I want to bring claims as a named representative in Ohio. And the state court there said, we'll entertain that application. So it was Halman who was actually seeking the relief in Ohio, not Nationwide, as the plaintiff has suggested. And in response, Nationwide said, Halman is too late to come into this court and be asserting state class action claims. If he's going to assert class action claims, he's got to assert them in federal court, as required by the Securities Litigation Uniform Standards Act. And the court went through the analysis under 15C under the Ohio Civil Procedure Rules and decided that, in fact, Halman was required, if he wanted to pursue a claim, he was required to do so under the federal securities laws in federal court. The plaintiff has now come into this court and said, somehow Nationwide is traditionally a stop from seeking the protection of the Securities Litigation Uniform Standards Act. And that can't be right. By seeking the protections of the federal securities laws in state court and the protections of SLUSA, we weren't waiving our statute of limitations arguments under the federal securities laws. In fact, we were trying to get Halman into federal court so he would be forced to confront the statute of limitations under the federal securities laws. So far from being judicially stopped, our position in Ohio state court is completely consistent with our position here. We took the position in Ohio state court that Halman should be subject to the federal securities laws in federal court and now that he's here, we're saying he should be subject to the federal securities laws and particularly the statute of limitations under the federal securities laws. And we think that's dispositive. Now, one other thing with respect to this claim that this is somehow a discussion of the merits of the case at this point. We're not taking a position this court has to decide the merits of Halman's claims or the Castillo claims or any other claims at this point. All we're saying is that the American pipe analysis is really quite clear. It requires the plaintiff, Halman, to show two things. First, that he was an asserted member of that Ohio Castillo class on the one hand. And second, that he has similar or the same claims as that Ohio state class. And he can't do either one. One, he's not an asserted member of the class because he didn't take a tax-sheltered annuity and use it to fund a retirement plan that was already tax-deferred. That's number one. And two, he has really a very different claim. Because as Your Honor pointed out, he doesn't have a claim about unnecessary tax deferral. He's only got one dose of tax deferral. So he can't be claiming that there's some nondisclosure of unnecessary tax deferral that he never received. Well, he is making that claim, though. He's claiming that somehow Nationwide has a duty to disclose the possible double taxation to everybody who buys a product from them. And there may be a class of people out there, Your Honor, who have that claim. And if they were here today at appellant's table, perhaps they'd be able to show that their claim was the same as the one that was asserted in Ohio. But again, if you look at the documents incorporated by reference in Hellman's complaint, and you look at Hellman's individual circumstances, he doesn't have that claim. He purchased something called an individual retirement annuity, which means that he only has a claim that somehow the individual retirement annuity that's expressly provided for by Congress is inappropriate for some reason. But he doesn't have the claim that there was a tax sheltered annuity placed into a tax sheltered account. And indeed, his substantive claims are really quite different because he's bringing a claim under the federal securities laws here, which obviously have a lot of protections under the Private Securities Litigation Reform Act that were not the case in Ohio when those state law fraud claims were made. Let me address one last point on this American pipe tolling, which is there was some discussion by plaintiff's counsel with respect to how this is all about fairness to Mr. Hellman. And the American pipe decision and the cases that follow are really quite clear about the fairness that's trying to be achieved. And it's not just fairness to permit subsequent class actions. It's fairness to balance judicial efficiency on the one hand, permitting a class action to serve its purpose, and also preventing stale claims on the other. And it's that balance that we are asking for here. And I think fairness is not the test. It's whether or not there's an appropriate balance. One other point that the district court did not rely upon specifically, but could have relied upon to support the judgment here, is the one-year statute of limitations point. Let me just say a couple of words about that. And that is that even assuming that Hellman were a member of that Castillo class, and even assuming that he had the same claim as that Castillo class in Ohio State Court, his claim is still barred because the one-year statute of limitations under the securities laws would have expired before the Castillo claim was even filed. Hellman seems to argue that the test should be different for an omission rather than a misstatement. He says that, but if you look at what his omission is, that we should have disclosed that there was some unnecessary tax deferral. And follow that logic for a second. If Hellman, who purchased his annuity on October 6, 1997, got a contract and a prospectus that laid out in tremendous detail the tax deferral features of his annuity, as well as the costs and other benefits of that annuity. And he understood at the time that he was using that annuity in order to put it into his retirement plan that was already tax deferred. He was clearly on constructive notice at that point that he was using a tax deferred investment to fund a retirement plan that was already tax deferred. It's not clear from his complaint how he could have been confused about that double tax deferral at that point. And therefore, the fact that he's saying, well, you admitted to tell me there was unnecessary tax deferral, he could have figured that out on his own. And indeed, the Southern District of New York, in a case called Donovan v. Scandia, reached exactly the same result. It said, how could a purchaser have been confused here about unnecessary tax deferral when the annuity sets forth in three or four pages of the contract all the tax deferral features of the annuity? And if the purchaser was looking to fund a retirement plan that was already tax deferred, it would have been obvious, or at least constructive notice, that there was going to be this so-called double dose of tax deferral, this so-called unnecessary tax deferral. And there would be no need for Nationwide to have made that disclosure. And there's no omission to disclose claim that can follow from that. So are you conceding that the American Pipe Rule applies to a subsequent federal class action? It seems to me there's cases that go various different ways using the rationale of American Pipe itself. Our position, Your Honor, is that there is a serious question as to whether or not a prior state court class action can toll federal causes of action in federal court, particularly where those claims have become, in effect, exclusive. And indeed, there's a recent case by the Seventh Circuit that you may want to consult. N. Ray Copper, Antitrust Litigation, 436 Fed 3rd 782, where the Seventh Circuit... We've consulted it. Go ahead. Yeah. And the Seventh Circuit, I think, makes a very persuasive argument that the policy rationale of American Pipe only applies where one federal class action is following another federal class action. And we think that reasoning applies here. But there's no need to reach that question because under the American Pipe, is he asserted member of the class and does he have the same substantive claim? His claim is barred by the three-year statute of repose, as well as this one-year statute of limitations argument. So, we think we're covered on that as well. Finally, let me mention just a couple things about this untimely filing of the opposition. We think, Your Honor, Scott, it's exactly right when you said the plaintiffs are stuck with a record and there's no record that would support any appeal from the district court's decision here. They did not go to the district court and said, hey, judge, you got the facts wrong, you counted wrong, anything like that. As I understand it, all they're doing is coming in and claiming that there's some equitable estoppel on our part based on a bunch of facts that weren't in the district court record. Even if Your Honors were to consider all those facts at this point and make a decision with respect to those facts, I want to point out something that perhaps isn't so clear in the papers, in the briefs, and that is that there's nothing that Nationwide said that led the plaintiffs to believe that service was by mail instead of by hand. See, I don't understand how, what's good for the goose is good for the gander, and I don't understand if we can't consider extra district court stuff, we can't consider it, no matter in whose favor it cuts or doesn't. We agree with that, Your Honor. If Your Honor's position is you can't consider facts outside of the district court record, we agree, and we think the district court clearly had the discretion under Local Rule 1.10 to dismiss this case when the filing was not made on time. But didn't the district court use an elephant gun to cure a relatively minor default? Well, not filing in opposition to a motion to dismiss, They did, it was one day late. They did it one day late, they say, yes. Is the judicial machinery of the district court going to crumble with a one day late filing such that the case should be dismissed? I think if you couple that with the fact that the district court called plaintiff's counsel and said, where's your brief in opposition, and didn't get a call back, then the district court certainly was within his discretion to dismiss under those circumstances. And that's particularly true where the plaintiffs never came back to the district court and said, hey, we had some reason not to file on time. We had some perfectly legitimate reason. The plaintiffs were essentially silent during this entire process despite the district court reaching out to them to try and get some answer here as to what was going on. So perhaps Your Honor's right that this is an unusual situation, but under the circumstances, the district court was certainly justified, one, because the local rule gives him discretion to dismiss if the opposition isn't filed on time. And number two, the local rule is quite clear. If you want an extension, you have to file for an extension and you have to do so before the deadline. You can't wait until after the deadline and then not respond and just take your appeal. That prevents the district court from showing any kind of fairness at all. The district court followed the rules and the rules are what ought to apply here. Thank you, Your Honor. Mr. Spencer. I see I have 28 seconds, so I'll be very brief, Your Honor. Actually, you're 28 seconds over, so you're on grace. You're on a little grace. But I have two little points which I hope will answer a couple of things. Mr. Platt just said to you that Mr. Hellman purchased his annuity pursuant to Internal Revenue Code Section 408B, which deals with individual retirement annuities. And if you look at page 33 of the excerpts of record, which is the class action allegation in the Ohio case, Section 408B is one of the sections that is listed there. So his claim, whether Mr. Platt agrees that it makes sense or not, was covered in this case. So Mr. Platt, the counsel argues that under American Pipe, we have to look to the actual individual circumstances of Hellman. And we have in the record what he did, in fact, purchase, right? That he did purchase, yes. What he purchased. Don't we have that in the record? Yes. Okay. Well, so when you look at it, it says IRA, certificate owner and annuitant must be the same, which is what the opposing counsel said he purchased. I don't think there's any dispute about what he purchased. The question is whether it was covered by the Castillo action, right? And my point here is that clearly the class allegations in the Castillo action covered his purchase. 408B is the kind of annuity that Mr. Platt says, because of the way it's set up, doesn't involve the duplicate tax deferral. But the further part of the Castillo class was that they were then sold another tax sheltered, I want to say security, but I don't think that's what it's supposed to say, annuity or plan. Well, with all respect, Your Honor, I do think that the controlling language here about the scope of the class is the class allegation. And all of the substantive allegations in the complaint about what was wrong with respect to the class members obviously for absent class members depend from this class definition. And his point is that for 408B individual retirement annuities there is no duplicate tax benefit and therefore there's no wrong. That is an argument on the merits. And Mr. Hellman clearly was within the class back in Ohio for which that merits argument would or would not succeed. But the threshold issue here for tolling purposes is whether it's the same class making the same allegations. And here it is. Second and finally in the time that I don't have, Your Honor, Mr. Platt said that because of the prospectus that Mr. Hellman received, he could have figured out all of the problem that we say was omitted on his own. And I'll point out, Your Honor, that there is now a substantial body of federal regulation that requires sellers of annuities to make precisely the disclosure that we say was omitted if the prospectuses which have been around since day one and are still around make that disclosure adequately. There would be no reason for that regulation. The regulation does exist for a reason and it's because the omission is critical. Thank you. Thank you, Mr. Platt.
judges: Rymer, Wardlaw, Selna